IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                                  Case No.  14-cv-10-wmc

JENNIFER A. DIGMAN
966 Heil RD
Cuba City, WI 53806

and

BENTON FEED FARM & SUPPLIES LLC
DWAYNE A. SCHULTZ
Registered Agent
W9077 Schutz Road
Lodi, WI 53555

J. GILE DAIRY EQUIPMENT INC.
JOHN G. GILE
Registered Agent
915 S. Main St.
Cuba City, WI 53807

SPILLANE TOWER MOTEL LLC
JOSEPH SPILLANE
Registered Agent
112 S. Main St.
Cuba City, WI 53807

REDDY AG SERVICE
HAROLD G. REDDY
Registered Agent
3984 Commercial Street
P. O. Box 38
Stitzer, WI 53825

MERCY MEDICAL CENTER
JEFF BADGER
Registered Agent
1570 Midway Place
Menasha, WI 54952

DICKEYVILLE FEED LLC
LEONARD J. TIMMERMAN
Registered Agent
220 North Avenue
P. O. Box 457
Dickeyville, WI 53808

KOWALSKI-KIELER INC.
BEN THEIR
Registered Agent
3179 CTY HH
Dickeyville, WI 53808

DAVE BAUS PLUMBING, HEATING, &
PUMP SERVICE INC.
DAVID C. BAUS
Registered Agent
937 CTY HWY H
Cuba City, WI 53807

NEW HORIZONS COOPERATIVE
1775 Fourth Street
Fennimore, WI 53809

PREMIER COOPERATIVE
501 W. Main St.
Mount Horeb, WI 53572

LVNV FUNDING LLC
c/o Steven A. Linder, Esq.
Meyer & Njus, P.A.
200 South Sixth Street
Suite 1100
Minneapolis, MN 55402

DISCOVER BANK
c/o Paul H. Thielhelm, Esq.
Schelble Law Firm, S.C.
622 N. Water St., Ste 400
Milwaukee, WI 53202

MURRAY'S DAIRY FARM &
REFRIGERATION INC.
JAMES T. MURRAY
Registered Agent
463 N. Washington St.
Lancaster, WI 53813

ALLEGIANT OIL LLC
P. O. Box 127
Lancaster, WI 53813

        Defendants.

## JUDGMENT OF FORECLOSURE AND SALE

  Defendants J. Gile Dairy Equipment Inc., Spillane Tower Motel, LLC, Dickeyville Feed, LLC, Dave Baus Plumbing, Heating, Pump Service, Inc., Premier Cooperative, Lvnv Funding, LLC, Allegiant Oil, LLC, Dr. Valerie B. Peckosh, Discover Bank, Benton Feed Farm & Supplies, New Horizons Supply Co-op, Reddy Ag Service, Murray's Dairy Farm & Refrigeration, Kowalski-Kieler, and Mercy Medical Center, having failed to appear, plead, or otherwise defend in this action, and default having been entered on May 22, 2014; Defendant Jennifer Digman having entered into a Stipulation with the United States regarding entry of judgment (dkt. #29); and counsel for Plaintiff United States of America ("Plaintiff"), having requested judgment against the defaulted

3

Defendants and Defendant Digman and having filed a proper motion and declarations in accordance with Fed. R. Civ. P. 55(a) and (b);

Judgment is hereby entered in favor of Plaintiff and against Defendants as follows:

## Real Estate

1. There is now due and owing to Plaintiff as of and including November 19, 2014, the following sums: See Attachment A.

2. Plaintiff is entitled to Judgment of Foreclosure and Sale in the usual form on the mortgaged premises, located in Grant County, Wisconsin, and described more specifically as:

> Part of the Southeast Quarter (SE ¼) of the Northeast Quarter (NE ¼) of Section Thirty-four (34), Township Two (2) North, Range One (1) West of the 4th P.M., Smelser Township, Grant County, Wisconsin, described as follows: Commencing at the East Quarter corner of said Section 34: thence South 89°41'13" West 840.53 feet along the East-West Quarter line of said Section to the point of beginning; thence South 89°41'13" West 371.61 feet along said East-West Quarterline; thence North 04°22'10" East 399.18 feet; thence South 89°06'32" East 360.71 feet; thence South 02°51'20" West 390.86 feet to the point of beginning.

3. The premises shall be sold as a whole at public auction in the County of Grant, State of Wisconsin, by or under the direction of the United States Marshal for the Western District of Wisconsin, no sooner than 90 days after the date of this judgment.

4. Defendants and each of their heirs, successors and assigns, and all persons claiming under them or either of them after the filing of the notice of the

4

pendency of this action, be forever barred and foreclosed of all right, title, interest, and equity of redemption in the mortgaged premises.

    5.    In case of sale pursuant to this Judgment:

        a. the United States Marshal shall give public notice of the time and place of the sale as required by law, and that notice of the sale be published in <u>The Grant County Herald Independent</u>, a newspaper published in the City of Lancaster, Grant County, Wisconsin;

        b. the United States Marshal shall allow any of the parties to this action to purchase at the sale the above-described premises;

        c. the United States Marshal shall file with the Clerk of this Court his report of the sale, and shall also immediately after the sale deposit the proceeds thereof, after deducting the costs and expenses of the sale unless otherwise ordered by the Court;

        d. the United States Marshal may accept from the purchaser at such sale, as a deposit or down payment upon the same, not less than ten percent (10%) of the purchase price, in which case such amount shall be deposited as above provided, and the balance of the sale price shall be paid to the United States Marshals' Service by the purchaser at the sale, upon confirmation thereof, except that if Plaintiff is the successful bidder at the sale, the

United States Marshal may take the receipt of Plaintiff in lieu of cash payment;

e. the United States Marshal, upon compliance on the part of the purchaser with the terms of the sale as required by law, shall make and execute to the purchaser a deed to the premises so sold, as above described, stating the price paid therefor;

f. the United States Marshal shall deliver the deed to the purchaser, upon compliance by the purchaser with the terms of the sale, and the payment by him of any balance of the sale price to be paid;

g. the United States Marshal shall thereupon pay from the proceeds of the sale all claims superior to Plaintiff as determined by the Court, and to Plaintiff, the amount of said judgment, together with interest from the date of judgment on all of said sums, as set forth in 28 U.S.C. § 1961(a), from the date hereof, or so much thereof as the monies derived from the sale of the premises will pay the same, and take receipts therefor; and

h. the surplus money, if any, shall be subject to the further order of the Court.

6. If the proceeds of the sale are insufficient to pay the amounts aforesaid, the United States Marshal shall specify the amount of the deficiency in his report of sale. Deficiency judgment is not being sought herein.

7. Upon confirmation of sale of the mortgaged premises:

   a. the purchaser or purchasers, or his or their heirs, representatives or assigns, shall be let into possession of the premises sold, upon production of the Marshal's deed thereto or duly authenticated copy thereof;

   b. any of the parties to this action who may be in possession of the premises, and every other person who since the filing of notice of the pendency of this action has come into possession of the same or any part thereof under them or either of them shall deliver to such grantee or grantees named in the deed possession of the mortgaged premises, and

   c. a writ of assistance shall issue if necessary to secure such possession.

8. Plaintiff may pay any taxes or insurance premiums on the mortgaged premises now due or which shall hereafter become due before the sale thereof and have a lien on the premises for the amount so paid, with interest on all of sums from the date of judgment at the rate set forth in 28 U.S.C. § 1961(a); and that in the event any such payments are made, Plaintiff may obtain an order at the foot of this judgment directing that the amounts so paid, with

interest, be likewise paid from the proceeds of the sale or redemption of the mortgaged premises.

9. Defendants and all persons claiming under them be and they are hereby enjoined from committing waste upon the mortgaged premises and from doing any other act that may impair the value of the same.

10. Defendants and each of them, their heirs, successors and assigns; and all persons claiming under them or either of them after the filing of notice of the pendency of this action, be forever barred and foreclosed of all right, title, interest, and equity of redemption in said mortgaged premises.

11. Defendants and all persons claiming under them be and they are hereby enjoined from committing waste upon said mortgaged premises and from doing any other act that may impair the value of the same.

### Chattel

12. There is now due and owing to Plaintiff as of and including November 19, 2014, the following sums: See Attachment A.

13. Plaintiff is entitled to possession of the items of security on which the Farm Service Agency has a first security interest, as set forth in Attachment B, after the expiration of 90 days from the date of entry of this judgment.

14. Plaintiff may exercise its right to have execution issued and require the United States Marshal to take possession of the items of security listed in Attachment B at any time after the expiration of 90 days from the date of entry

this judgment, and deliver the items of security to Plaintiff, and a writ of execution shall issue if necessary to secure such possession.

15. These items of security, described in Attachment B, may be sold individually or as a whole at public sale or private sale by or under the direction of the United States Marshal or the Farm Service Agency.

16. If these items of security, described in Attachment B, are sold, the United States shall deposit the proceeds thereof, after deducting the costs and expenses of the sale, and unless otherwise ordered by the Court, the United States shall thereupon pay from the proceeds of the sale all claims superior to Plaintiff as determined by the Court and to Plaintiff the sums set forth in Attachment A, the amount of the judgment, together with interest on all sums at the rate set forth in 28 U.S.C. § 1961(a) from the date of the Judgment, or so much thereof as the monies derived from the sale of the items of security will pay, and take receipts therefor; that the surplus money, if any, shall be subject to further order of the Court.

17. If the proceeds from the sale of the items of security, together with the proceeds from the sale of the real estate, are insufficient to pay the amounts set forth above, then the United States may report the amount of the deficiency to the Court. Deficiency judgment is not being sought in this action.

18. Defendants and each of them, their heirs, successors and assigns; and all persons claiming under them or either of them, be forever barred and

foreclosed of all right, title, interest, and equity of redemption in said mortgaged collateral.

19. Defendants and all persons claiming under them or either of them, are hereby enjoined from doing any act that may impair the value of the mortgaged collateral.

Dated this 19th day of November, 2014

BY THE COURT:

WILLIAM M. CONLEY
United States District Judge
Western District of Wisconsin

Entered at Madison, Wisconsin, this 19th day of November, 2014.

PETER OPPENEER
Clerk of Court
United States District Court
Western District of Wisconsin

UNITED STATES V. JENNIFER DIGMAN, et al.

Case No. 14-cv-10-WMC

ATTACHMENT A

Notes and Mortgages

| | | |
|---|---|---|
| a. | Principal as of November 19, 2014 | $ 123,109.78 |
| b. | Interest as of November 19, 2014 | $  41,049.61 |
| | Total as of November 19, 2014 | $ 164,159.39 |

Costs

| | | |
|---|---|---|
| e. | United States Marshals Fees | $ 1,613.17 |
| f. | Filing of Notice of Lis Pendens | $    30.00 |
| | Total Costs | $ 1,643.17 |
| | **Total as of November 19, 2014** | $ 165,802.56 |

ATTACHMENT B
UNITED STATES OF AMERICA V. JENNIFER DIGMAN, et al.
Case Number 14-cv-10-wmc

LIST OF ITEMS OF SECURITY

A. All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this instrument is signed or otherwise become growing or harvested crops or other plant products (a) within the one-year period or any longer period of years permissible under State law, or (b) at any time after this instrument is signed if no fixed maximum period is prescribed by State law, including the crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| ITEM NO. | NO. OF ACRES | OWNER | LOCATION | DESCRIPTION |
|---|---|---|---|---|
| 1 | | | | All crops and plant products wherever grown on property |

B. All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following:

| ITEM NO. | QTY | DESCRIPTION | MANUFACTURER | SIZE AND TYPE | SERIAL OR MODEL NO. |
|---|---|---|---|---|---|
| 1 | 1 | Feed Bin, Bottom Slide | | 6 Ton | |
| 2 | 1 | Reverse Osmosis System | | | |
| 3 | 1 | Hot Water Heater | Rhem/Marathon | 104 Gallon | 2010 |
| 4 | 1 | Water Softener System | | | |

| 5 | 1 | Square Bale of Hay, Large | | | |

C. All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Defendant Jennifer Digman, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following:

| ITEM NO. | QTY | DESCRIPTION | BREED | COLOR |
|---|---|---|---|---|
| 1 | 2 | Dairy Cattle – Other – April Calves | Jersey | |
| 2 | 35 | Goats – Kids – Bucks | | |
| 3 | 14 | Goats – Breeding Goats – Bucks | | |
| 4 | 103 | Goats – Dairy - NY Does | | |
| 5 | 55 | Goats – Dairy - Doelings | | |
| 6 | 1 | Livestock – Other - Llama | | |
| 7 | 35 | Poultry – Chicken - Layers | | |

2

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Public Burden Statements).

Position 1

FSA-2028
(09-03-10)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## SECURITY AGREEMENT

1. THIS SECURITY AGREEMENT, dated *(a)* __January 1, 2011__, is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*

   __JENNIFER A DIGMAN__

   (Debtor), whose mailing address is *(c)* __966 HEIL RD, CUBA CITY, WI 53807-9542__

2. BECAUSE Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

   The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

   It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

   NOW THEREFORE, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

   DEBTOR GRANTS to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial __JD__   Date __8/31/11__

Exhibit H

FSA-2028 (09-03-10)  Page 3 of 7

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* __Wisconsin__ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 5 | Poly Calf Huts | | | | | |
| 2 | 4 | Milking units | In RE appraisal | | | 2004 | |
| 3 | 1 | Skidloader | Catapillar | 226 | good | 2002 | #4NZ05784 |
| 4 | 1 | semen tank | | | | | |
| 5 | 4 | Milking units | | | | 2006 | |
| 6 | 1 | Milk pump | | | | 2004 | |
| 7 | 1 | Bulk tank | | 100 gallons | | 2001 | |
| 8 | 3 | Pulsators | | | | 2004 | |
| 9 | 1 | Miscellaneous | | | | | |
| 10 | 1 | Milk bulk tank | | | | 2010 | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _JV_    Date _8/31/11_

Exhibit H

FSA-2028 (09-03-10)

Page 5 of 7

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

Dairy assignment

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and *(3)* other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _____ Date 8/31/11

**Exhibit H**

FSA-2028 (09-03-10)  Page 7 of 7

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _[signature] JENNIFER A DIGMAN_  6B. (Date) 8/3/11
Debtor

(Date) _____

NOTE:  The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Exhibit H